**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|            ) | |
|        v.        ) | **CRIMINAL ACTION** |
|            ) | **NO. 05-1703-CBS** |

```
                          )
UNITED STATES OF AMERICA,  )
                          )
              v.          )      CRIMINAL ACTION
                          )      NO. 05-1703-CBS
GREG BING, DONNELLE JOYNER,)
ANTHONY SMITH, GERARD KIMBLE,)
ET AL,                    )
          Defendants,     )
                          )
```

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
**August 5, 2005**

**SWARTWOOD, C.M.J.**

    I.  <u>Nature of the Offense and the Government's Motion</u>

    On July 22, 2005, a Criminal Complaint was filed, charging Greg Bing ("Mr. Bing"), Donnelle Joyner ("Donnelle Joyner"), Anthony Smith ("Mr. Smith"), Gerard Kimble ("Mr. Kimble")(collectively "Defendants") and others, with conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §841(a)(1) and §846.

    On July 22, 2005, these Defendants had their initial appearance in connection with this Complaint and at that time, were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of

ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

On July 28, 2005, a consolidated probable cause/detention hearing was held and at that hearing, Richard Ridlon, a Massachusetts State Police Officer assigned to the U.S. Drug Enforcement Administration ("DEA") as part of a Task Force responsible for investigating violations of the Controlled Substances Act on both the Federal and State level, testified on behalf of the Government and was cross-examined by Defendants' counsel.

On August 5, 2005, I held a hearing involving Donnelle Joyner and Gerard Kimble for the purpose of releasing them on conditions. At that hearing, the Government filed a Motion For Reconsideration For Pretrial Detention under 18 U.S.C. §3142(f)(1)(C) and (f)(2)(A). Counsel for Messrs. Donnelle Joyner and Kimble objected to the allowance of this motion on the grounds that it was a motion to re-open the detention hearing. I allowed the motion and permitted the Government to submit criminal history reports concerning Mr. Kimble's record, which clarified information concerning Mr. Kimble's criminal record not explained in the Pretrial Services' report. (Govt. Ex. 2). I permitted the Government to mark for identification the transcripts of these telephone calls intercepted by the Government in which the Government alleges Husie Joyner and Greg Bing discuss the fact that

2

Donnelle Joyner may have in his possession a handgun that had been used in a murder in 2004. (Govt. Exs. A, B & C for ID). I did not admit these conversations as evidence because there was no testimony offered to authenticate the transcripts and no witness was presented who could (i) verify the Government's interpretation of the conversation (during which no gun or murder is mentioned) and (ii) be cross-examined by Donnelle Joyner's counsel. Additionally, the Government conceded that despite the execution of numerous warrants to search locations relevant to this investigation, no such handgun was discovered.

I advised the Government that I still intended to release Messrs. Donnelle Joyner and Kimble on conditions. The Government then notified me that it would appeal any Order releasing these Defendants and requested that any such Order be stayed pending disposition of its appeal. The Government's request for a stay of Messrs. Donnelle Joyner's and Kimbles release is granted.

## II.  Facts

1.  This case involves an alleged conspiracy in the Boston area involving the sale of substantial amounts of cocaine and cocaine base (crack cocaine). This investigation commenced in September 2004 and initially involved a cooperating source ("CS") who was later de-activated as a result of engaging in unauthorized purchases from individuals who were the target of this investigation. Govt. Ex. 1.

2.   This   investigation   primarily   involved   Title   III
intercepts   of   telephone   conversations   among   the   alleged
conspirators named in this Complaint and surveillance of those
conspirators.  Id.

3.   Each  of  the  Defendants  named  in  this  Complaint  are
alleged to have played a separate and distinct role in this alleged
conspiracy to sell cocaine and crack cocaine.

4.   Law enforcement officials have identified Mr. Bing and
another individual as the leaders of this alleged drug conspiracy;
Mr. Smith as an individual responsible for collecting money and
arranging for the supply of cocaine; Donnelle Joyner as a seller of
drugs; and Mr. Kimble as a purchaser of drugs.  Set forth below is
a summary of evidence presented by the Government with respect to
the roles of each of these individuals in this alleged conspiracy:

A.   Mr. Bing

From  September  2004  to  January  2005,  the  CS  made  six
controlled purchases of drugs from Mr. Bing as follows:

| DATE | NET WEIGHT | PRICE |
| --- | --- | --- |
| 9/24/04 | 60.6 grams | $1,850 |
| 10/5/04 | 61.7 grams | $1,850 |
| 10/26/04 | 60.2 grams | $1,850 |
| 11/16/04 | 60.2 grams | $1,850 |
| 12/1/04 | 61.1 grams | $1,850 |
| 1/11/05 | 122 grams | $3,700 |

Id.

An undercover DEA task force agent was present during the above first three controlled purchases and although he did not actually participate in the "hand to hand" transaction, he clearly observed the transactions.

Additionally, Mr. Bing was intercepted on numerous occasions coordinating the delivery and sale of cocaine and crack cocaine and the collection of proceeds for these sales.

### B.  Mr. Smith

On April 20, 2005, Mr. Smith and Husie Joyner were intercepted on the telephone talking about $7,000 that Mr. Smith owed Husie Joyner.  It is evident from the context of the conversation that the $7,000 is related to a drug transaction.

On April 25, 2005, Husie Joyner was intercepted requesting that Mr. Smith come to his residence to pick up a large amount of money.  The next day, Mr. Smith was surveilled going to Husie Joyner's residence, entering that residence and then exiting that residence carrying a medium sized, white and blue plastic bag. Later that day, Husie Joyner and Mr. Smith were intercepted on the telephone, talking about the money which Mr. Smith was in the process of then counting by use of a electric counting machine, which could be overheard operating in the background.

On May 12, 2005, Husie Joyner and Mr. Smith were intercepted during a telephone call in which Husie Joyner complained about the counting machine malfunctioning.  On July 5, 2005, Husie Joyner and

Mr. Smith were intercepted on the telephone discussing, in detail, money from recent drug transactions.  Id.

As a result of a series of intercepted calls between June 13 and June 23, 2005, it appears from these calls and from surveillance of an unknown individual driving to and stopping at Mr. Smith's residence in Walpole, that Mr. Smith had arranged for the purchase of five kilograms of cocaine from an unidentified source in Florida and that Mr. Smith gave the unidentified source $50,000 up front for delivery of the cocaine.

### C. Donnelle Joyner

During the course of this investigation, surveillance agents observed Donnelle Joyner with Mr. Bing, Husie Joyner and Mr. Smith and others allegedly involved in this conspiracy.  In particular, on April 22, 2005, Mr. Bing and Donnelle Joyner were observed, arriving at Mr. Bing's residence and while in the residence, Husie Joyner was intercepted in a telephone call to Mr. Bing in which Mr. Bing told Husie Joyner that Donnelle Joyner was present.  Mr. Bing then described to Husie Joyner the process Mr. Bing and Donnelle Joyner were following for making crack cocaine, attempting to get an accurate weight of that cocaine, and eventually determining during these conversations that Mr. Bing and Donnelle Joyner were attempting to weigh 992 grams of crack cocaine.  During this conversation, Donnelle Joyner got on the telephone with Husie

Joyner and explained how they were packaging and weighing the 992 grams of crack cocaine.

### D.  Mr. Kimble

On May 11, 2005, Mr. Kimble and Husie Joyner were intercepted on the telephone making arrangements for the sale of cocaine for $1,000.

On June 26, 2005, Husie Joyner and Mr. Kimble were intercepted making arrangements for Mr. Kimble to purchase drugs.  Following that intercepted telephone call, Husie Joyner was observed meeting with Mr. Kimble in front of a town-house owned by Mr. Kimble, enter that town-house and a few minutes later, Husie Joyner exited that town-house.

On July 10, 2005, Mr. Kimble was intercepted in a telephone conversation with another member of the conspiracy in which that member was pushing Mr. Kimble to collect money that Mr. Kimble owned that individual.

### III.  Probable Cause

With the exception of Mr. Bing, there were no controlled purchases from any other members of this alleged conspiracy and there is no evidence that these individuals were observed by law enforcement officials actually possessing and distributing cocaine or crack cocaine.  However, from the totality of the intercepted telephone calls involving these Defendants and surveillance of these Defendants, I find that probable cause exists to believe that

they are all involved in a conspiracy for the purchase and sale of cocaine and crack cocaine as charged in this Complaint.

### IV.    Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) *clear and convincing evidence*, that the Defendant is a danger to the community, or (2) *a preponderance of the evidence*, that the Defendant poses a risk of flight. See 18

8

U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), *cert. denied*, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. <u>See</u> <u>United States v. Friedman</u>, 837 F.2d 48, 49 (2d Cir. 1988).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of

the [Defendant] as required and the safety of any other person and the community," the judicial officer is compelled to consider the following factors:

> 1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> 2. the weight of the evidence against the person;
>
> 3. the history and characteristics of the person, including:
>
>> (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (b) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> 4. the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

V.  <u>Discussion of Whether Detention is Warranted</u>

A.  <u>Nature of the Offense and Weight of the Evidence</u>

These Defendants are charged in a conspiracy to possess with intent to distribute a substantial amount of cocaine and crack

10

cocaine.  From the Title III intercepts and surveillance of the parties, I have found that there is sufficient evidence for a finding of probable cause that these Defendants were involved in a drug conspiracy as charged in this Complaint.  However, with the exception of Mr. Bing, the weight of the evidence is not substantial.

## B. The Government's Burden

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if these Defendants are released, or the appearance of these Defendants as required.

The Government's burden of proof is by:

1.  *Clear and convincing evidence* that these Defendants, if released, would pose a serious danger to any person or the community, or

2.  A *preponderance of the evidence* that these Defendants, if released, would not appear as required.

## C. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community

if these Defendants are released, or the appearance of these Defendants as required.

The rebuttable presumption created by 18 U.S.C. §3142(e) applies in this case, because these Defendants are charged with drug offenses for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act.  I have found probable cause for the drug conspiracy offense charged against these Defendants.  Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of these Defendants or the safety of the community if they were released. I find that these Defendants have not produced nor proffered any credible evidence on their behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that these Defendants have failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that they pose a danger to the community and a risk of flight.

D.   Defendants' History and Characteristics; Whether
Defendants Pose A Danger To The Community And/Or Risk Of
Flight

1.   Greg Bing

Mr. Bing was not interviewed, but he has a substantial

criminal record which I summarize, in relevant part, as follows:

| DATE | OFFENSE | DISPOSITION |
|---|---|---|
| 8/12/88 | Threatening | 11/9/88, guilty, 30 days committed |
| 8/12/88 | Disorderly person | 11/9/88, guilty, 90 days committed |
| 8/12/88 | Disorderly person (additional offense) | 11/9/88, guilty, 90 days committed |
| 4/12/90 | Trafficking in controlled substances | 12/5/91, committed 5 to 7 years |
| 11/20/96 | Assault and battery | 7/8/98, continued without a finding to 7/6/99 |
| 12/19/97 | Possession of a Class D controlled substance | 1/15/98, guilty, probation to 7/14/98; 7/20/98, violation of probation, committed to 60 days house of correction |

| 12/3/98 | Aiding and abetting (3 Counts) (USD.Mass) | 8/12/99, 81 months committed, 60 months supervised release |
|---------|-------------------------------------------|-------------------------------------------------------------|
| 12/3/98 | possession with intent to distribute cocaine (5 Counts) (USD.Mass) | 8/12/99, 81 months committed, 60 months supervised release |
| 12/3/98 | Conspiracy to violate the Controlled Substances Act to distribute cocaine base (USD.Mass) | 8/12/99, 81 months committed, 60 months supervised release |
| 9/2/98 | Possession of a Class D controlled substance | 60 days committed |

Additionally, two Abuse Prevention Restraining Orders have issued against Mr. Bing in 1996 and 1998.

(i) <u>Whether Mr. Bing Poses A Danger To The Community</u>

The offenses charged in this Complaint were allegedly committed by Mr. Bing while he was on supervised release in this Court for prior drug offenses. Mr. Bing also has multiple prior drug related convictions in state court. Considering Mr. Bing's substantial criminal record, I find by clear and convincing evidence that he poses a danger to the community and that there are no conditions or combination of conditions that I can impose to protect the community if he were released.

(ii) <u>Risk of Flight</u>

I have no information concerning Mr. Bing's history and characteristics other than his criminal record. Based on that record, Mr. Bing has no incentive to appear in Court if he were released because of the substantial sentence he faces if convicted of the offenses charged in this Complaint. Therefore, I find by a preponderance of the evidence that Mr. Bing poses a risk of flight and that there are no conditions or combination of conditions that I may impose to assure his appearance in this Court as required.

2. <u>Anthony Smith</u>

Mr. Smith was born on April 11, 1969, in Wilmington, Delaware and at some point as a young man, moved with his family to the Boston area.

Mr. Smith's father is deceased and his mother lives in Dorchester, Massachusetts; Mr. Smith's stepfather is presently incarcerated in a federal correctional facility; two siblings live in the Boston area; and one sibling resides in Wilmington, Delaware.

Mr. Smith married his wife in June 1997 and they have two children, ages eleven and five. For the past year, Mr. Smith has resided in East Walpole, Massachusetts, with his wife and two children and his mother-in-law. Mr. Smith previously resided with his wife in Dorchester for four years and Mattapan for three years.

15

Mr. Smith has two other children from two prior relationships, a fifteen year old son, who resides with his mother in Delaware and an eighteen year old daughter, who resides with her mother in Dorchester. Mr. Smith maintains contact with both children.

For the past two years, Mr. Smith has been the co-owner and operator of Shoe Fetish, located on Columbus Avenue in Boston. Prior employment included being a supervisor with UPS in Norwood, Massachusetts from 1997 to 2003.

In 1993, Mr. Smith was charged in this District with conspiracy to distribute cocaine. On February 4, 1994, Mr. Smith was defaulted for failure to appear in connection with that case. However, that case was dismissed on April 1, 1996. On April 30, 1993, Mr. Smith was charged with being a fugitive from justice which was eventually dismissed, but on April 1, 1996, he was charged with failure to appear on personal recognizance for which he was committed followed by three years of supervised release.

On December 1995, Mr. Smith was charged with violating his bond for failing to appear in a drug case in Atlanta, Georgia. That case was eventually dismissed, but Mr. Smith was found guilty on May 13, 1996 for being a fugitive from justice.

Therefore, Mr. Smith has not only failed to appear in an earlier case in this Court, but failed to appear in the State Court in Georgia. Mr. Smith was a fugitive from justice for over a year until he was apprehended by the U.S. Marshal Service.

(i) <u>Whether Mr. Smith Poses A Danger To The Community</u>

As a result of Title III intercepts and law enforcement surveillance, it is clear that Mr. Smith was a major player in the cocaine and crack cocaine conspiracy charged in this Complaint. Mr. Smith was intercepted, dealing with large amounts of cash on behalf of a conspiracy and making arrangements for the purchase of a substantial amount of cocaine from Florida. Therefore, considering the totality of the evidence presented by the Government in connection with Mr. Smith's involvement with the conspiracy alleged in this Complaint, I find by clear and convincing evidence that Mr. Smith poses a danger to the community and that there are no conditions or combination of conditions that I could impose that would assure the safety of the community if he were released.

(ii) <u>Mr. Smith's Criminal History</u>

Mr. Smith's criminal history shows only two drug related felony offenses: one in this Court and one in the State Court of Georgia. Mr. Smith failed to appear in both cases and was eventually convicted in this Court for failure to appear and in Georgia as a fugitive from justice, but only after being apprehended by law enforcement officials. Mr. Smith has offered to post substantial security for his release. I find that that condition is insufficient based on Mr. Smith's prior record of flight and find by a preponderance of the evidence that Mr. Smith

17

poses a risk of flight and that there are no conditions or combination of conditions that will assure his appearance in this Court as directed.

### 3.  <u>Donnelle Joyner</u>

Donnelle Joyner was born on October 31, 1971, in Boston, Massachusetts and has resided in this District for his entire life.

For the past two and one-half years, Donnelle Joyner has resided in Quincy, Massachusetts; prior to that, he resided in Hyde Park for three years with a girlfriend; and prior to that, he resided in Roxbury, Massachusetts for five years with another girlfriend.

Donnelle Joyner has a total of nine children and pays child support for three of those children.

Donnelle Joyner's father resides in Ohio and his mother resides in Brookline.  Donnelle Joyner has twin siblings, who reside in the Boston area.

For the past month, Donnelle Joyner has been employed by the Marriott Hotel in Cambridge, Massachusetts as a security guard. Prior to that, Donnelle Joyner worked for Longwood Security for a year.  Prior employment included working for UHaul in Natick, Massachusetts for one and one-half years and at a tobacco warehouse in North Carolina for four months during the summer.

On August 30, 1991, Donnelle Joyner was charged with possession with intent to distribute a Class B controlled substance

and on October 9, 1991, he was found guilty of that offense and received two years probation.

On October 7, 1997, Donnelle Joyner was charged with possession of a Class D controlled substance and on March 5, 1998, found guilty of that offense and received one year of probation.

(i) <u>Whether Donnelle Joyner Poses A Danger To The Community</u>

Donnelle Joyner has been convicted of drug offenses in 1991 and again in 1997. However, on both occasions, Donnelle Joyner was placed on probation. I do not find that Donnelle Joyner was a major player in this case, although there is substantial evidence he purchased illegal drugs from members of this alleged conspiracy. Therefore, I decline to detain Donnelle Joyner on dangerous grounds as I find that there are conditions or a combination of conditions that I can impose that will assure the safety of the community if he were released.

(ii) <u>Whether Donnelle Joyner Poses A Risk Of Flight</u>

Donnelle Joyner has strong family ties to Massachusetts, has a place to stay with his girlfriend in Dorchester, Massachusetts if he were released, has no history of defaults and is currently employed. Therefore, I do not find that Donnelle Joyner poses a risk of flight.

4. <u>Gerard Kimble</u>

Mr. Kimble was born in Boston, Massachusetts on May 15, 1971; was raised in Roxbury; attended schools outside of Boston via the

METCO Program; graduated from Lincoln-Sudbury High School in 1991; and attended Fisk University in Nashville, Tennessee for three years.  Mr. Kimble left college because of an inability to pay tuition.

Mr. Kimble's mother resides in Virginia Beach, Virginia.  Mr. Kimble has had very limited contact with his father.  Mr. Kimble has no siblings.

Mr. Kimble has custody of his thirteen year old son since the child's mother died in 2002 and has another child living in the Boston area.  For the past two years, Mr. Kimble has resided in Section 8 housing, in Dorchester, Massachusetts.  Previously, Mr. Kimble lived in Roxbury on his own for five years and prior to that, with his mother in Roxbury.

For the past four and half years, Mr. Kimble has been employed at the Auto Design Haus, in Boston, Massachusetts.  Apparently, Mr. Kimble's employer is willing to have him continue employment if he were released.  Mr. Kimble reports past employment with the MBTA as a toll collector, Molly Construction Company and the MDC working in pool maintenance during the summer as a college student.

In 1991, while attending Fisk University in Nashville, Tennessee, Mr. Kimble was arrested and apparently escaped from a police vehicle while handcuffed.  Mr. Kimble was charged with escape and larceny with respect to the handcuffs.  Both charges were later dismissed.

On May 25, 1994, Mr. Kimble was charged and later found guilty of manufacturing a Class B controlled substance and possession with intent to distribute a Class B controlled substance.  Mr. Kimble received six months probation for these offenses.

On October 30, 1998, Mr. Kimble was charged and later found guilty of assault and battery with a dangerous weapon and assault and battery.  Mr. Kimble received a six month suspended sentence for these offenses.  Govt. Ex. 2.

(i) Whether Mr. Kimble Poses A Danger To The Community

Mr. Kimble was intercepted making arrangements for the purchase of cocaine from members of the conspiracy alleged in this Complaint.  However, it appears that Mr. Kimble played a minor role in this conspiracy (purchaser of drugs) and Mr. Kimble has a negligible criminal record.  Therefore, I find that there are conditions or combination of conditions that I can impose that will assure the safety of the community if Mr. Kimble were released.

(ii) Whether Mr. Kimble Poses A Risk Of Flight

Although Mr. Kimble has, in the past, been charged with escape it appears that that occurred in 1991 while he was attending college in Nashville, Tennessee and that offense was subsequently dismissed.  Mr. Kimble has substantial family ties to this District in that he has custody and is the sole support of his thirteen year old son.  Additionally, Mr. Kimble has an aunt, who lives in Massachusetts and has offered to post security for Mr. Kimble's

appearance in this Court.  Therefore, I find that I can impose conditions for Mr. Kimble's release that will assure his appearance in this Court as directed.

VI.  <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.  That Messrs. Bing and Smith be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That Messrs. Bing and Smith be afforded a reasonable opportunity for private consultation with counsel; and

3.  On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Bing and Smith are detained and confined shall deliver Messrs. Bing and Smith to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

VII.  <u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

VIII.  <u>STAY</u>

I have determined that Messrs. Donnelle Joyner and Kimble shall be released on conditions.  However, the Government notified me that it intends to appeal my order of release with respect to these Defendants and has requested that I stay that Order.  That request is granted and Messrs. Donnelle Joyner and Kimble shall remain in custody pending disposition of the Government's appeal.


<u>/s/Charles B. Swartwood, III</u>
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE